BUDKIEWICZ *v.* ELGIN, JOLIET AND EASTERN RAILWAY COMPANY.

[No. 29,562. Filed June 10, 1958. Rehearing denied October 15, 1958.]

536

*Jay E. Darlington,* of Hammond, for appellant.

*Glenn D. Peters, Peters, Highland & McHie,* of Hammond, *Harlan L. Hackbert,* and *Stevenson, Conaghan, Velde & Hackbert,* of counsel, of Chicago, Illinois, for appellee.

EMMERT, J.—This appeal is here by reason of four judges of the Appellate Court failing to concur. Section 4-209, Burns' 1946 Replacement. It is from a judgment entered for appellee because appellant refused to amend his complaint after a demurrer for want of facts had been sustained thereto.

The complaint is for personal injuries sustained by appellant when his automobile collided with a freight train operated by appellee at a place where the railroad crossed Indiana Highway No. 149 at grade. The crossing was unlighted, not protected by gates, flasher lights or any other mechanical warning device, but there was a cross arm sign at the crossing. Rhetorical paragraph 4 of the complaint charged:

"4. On October 20, 1953, in the evening after dark, plaintiff was returning home from work, driving his 1951 Pontiac automobile. He was going north on said Highway 149, approaching said crossing from the south. His automobile collided

with one of defendant's cars standing on this crossing. This collision was a direct and proximate result of defendant's negligence (that is to say, the failure of its said employees to use that degree of care which an ordinary prudent person would use under like circumstances) in the following respects:

(a) Defendant had created a situation at this crossing at that particular time which in fact made the crossing extra hazardous at that time by giving a false and deceptive appearance of safety, which was likely to and did deceive and entrap an approaching motorist using ordinary care such as plaintiff. More particularly; it was a dark night. This was a two-lane black top highway. It had recently been covered with a fresh coating of blacktop. Defendant placed a black tank car across this highway at this crossing. The nature of the tank car was such that its black tank body was suspended several feet above the surface of the highway at the crossing, and there was considerable open space beneath and at the ends of the tank. This, in conjunction with the black top highway, created a false appearance and illusion to the approaching motorist in plaintiff's situation that the crossing was open and that there was only a black highway extending ahead of him across and beyond the crossing. In this situation which in fact existed at this crossing that night, a person using ordinary care in the position of defendant's train crew would have known that motorists using ordinary care such as plaintiff were in danger of being deceived and entrapped into colliding with this tank car, and would have used care to prevent this deceptive situation, either by not placing this particular black car in this position relative to the highway, or by placing some kind of temporary warning at the crossing by means of a light or crew member, or any other means sufficient to warn the motorist of this hidden danger confronting him. This train crew then and there knew, or in the exercise of ordinary care should have known, all the facts above set forth in

this paragraph, but nevertheless they neglected and failed to do anything to warn plaintiff of this particular peril that night. As plaintiff approached this crossing that night, he had his car equipped with good and adequate headlights and brakes, he was alert and keeping a look-out and was using ordinary care for his own safety. But nevertheless, by reason of the aforesaid situation and said negligence of the defendant, he was unable to see this tank car in time to avoid colliding with it, and was caused to collide with it."

The complaint is hardly to be commended as a model of succinct pleading of facts under the Code, but on the other hand the appellee did not file any motion to require it to be made more specific. If such a motion had been filed and overruled and then followed by a demurrer for want of facts, the sufficiency of the complaint would be determined from the facts stated in the complaint. *Neal* v. *Baker* (1926), 198 Ind. 393, 400, 153 N. E. 768; *Enterprise, etc. Pub. Co.* v. *Craig* (1924), 195 Ind. 302, 306, 144 N. E. 542; *Terre Haute, etc. Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 380, 381, 132 N. E. 740.[1]

The rule is well settled in this state that where there has been no motion to require the complaint be made

---

1. "This can only mean that where a proper motion to make the pleading more specific by setting out the facts is duly made, and is overruled, the pleading must be regarded as already stating specifically the facts relied on to support the conclusions to which such motion was addressed." *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 380, 381, 132 N. E. 740.

"Appellant's motion to make the complaint more specific by setting out the facts relied on to support each of several alleged conclusions therein having been overruled, the sufficiency of the complaint to withstand a demurrer must be determined from the facts stated, without support from any such alleged conclusions which were not drawn from facts fully pleaded and set out in it. *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740." *Enterprise, etc., Pub. Co.* v. *Craig* (1924), 195 Ind. 302, 306, 144 N. E. 542.

more specific, and its sufficiency is attacked by a demurrer, the complaint is liberally construed to sustain its validity. *Lincoln Operating Co.* v. *Gillis* (1953), 232 Ind. 551, 558, 114 N. E. 2d 873; *Rochester Bridge Co.* v. *McNeill* (1919), 188 Ind. 432, 439, 122 N. E. 662.[2]

The memorandum to the demurrer alleged that the complaint failed to charge actionable negligence. Actionable negligence has three essential elements: (1) a duty imposed by law to do or not to do a certain act; (2) a violation of that duty by an act or omission to act which constitutes a breach of that duty; and (3) injury proximately caused by such breach of duty. *Terre Haute, etc. Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 382, 132 N. E. 740, *supra; Elder, Receiver* v. *Rutledge, Admx.* (1940), 217 Ind. 459, 464, 27 N. E. 2d 358; *Indianapolis Abattoir Co.* v. *Neidlinger* (1910), 174 Ind. 400, 403, 92 N. E. 169. Section 10-3904, Burns' 1956 Replacement, creates a duty on a railroad not to permit a freight train to

---

2. "In construing a complaint where a demurrer is interposed, it will be deemed sufficient whenever the necessary allegations can be fairly gathered from all the averments, even though stated illogically and by way of argument, and all facts will be deemed stated that can be implied from the allegations made by fair and reasonable intendment, and facts so impliedly averred will be given the same force as if directly stated. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Agar* v. *State* (1911), 176 Ind. 234, 94 N. E. 819; *Valparaiso Lighting Co.* v. *Tyler* (1911), 177 Ind. 278, 96 N. E. 768; *Richmond Light, etc., Co.* v. *Rau* (1915), 184 Ind. 117, 110 N. E. 666." *Fauvre Coal Co.* v. *Kushner* (1919), 188 Ind. 314, 325, 123 N. E. 409.

"Under the present liberal rules of pleading, it will be unnecessary for us to analyze the complaint in this particular, for the demurrer admits not only the facts directly and specifically alleged in the complaint but also all facts that can be implied from other allegations by reasonable and fair intendment. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Vandalia Coal Co.* v. *Coakley* (1915), 184 Ind. 661, 111 N. E. 426." *Rochester Bridge Co.* v. *McNeill* (1919), 188 Ind 432, 439, 122 N. E. 662.

remain standing across a public highway.[3] In view of the rule that we construe a complaint to sustain it, we must hold that it charged more than a momentary stopping, or blocking of the highway for a reasonable time. The statute was enacted for the benefit of the public using the highways, not only to keep traffic moving, but to protect travelers from this kind of an obstruction in the highway. See *Central Indiana R. Co. v. Wishard* (1917), 186 Ind. 262, 272, 114 N. E. 970. A violation of this statute is negligence *per se*. A plaintiff may be guilty of contributory negligence in colliding with such an obstruction, but that is another matter to be considered later. The complaint charged facts which, as against a demurrer, showed a violation of this statute, and it was not necessary to name the statute breached, or charge the omissions in the exact language of the statute. "We take judicial notice of our statutes. The complaint here alleged facts which were a breach of the duties put upon appellant by the statute. This was a sufficient allegation of negligent conduct. *Penn Co. v. Fertig* (1904), 34 Ind. App. 459, 70 N. E. 834, *supra*, 45 C. J. 1092, 65 C. J. S. 886, §187. The facts constituting the breach of the statute were specifically alleged and so certain that the nature of the charge was apparent." *Corey v. Smith* (1954), 233 Ind. 452, 456, 120 N. E. 2d 410. When the cause is tried, the evidence may show that the appellee did not violate §10-3904,

---

3. "Whoever, being a conductor or other person having charge of, or running a railroad train, carrying, or used for carrying, freight, permits or suffers the same or any car or locomotive engine composing the same to remain standing across any public highway, street, alley or farm crossing, *or who, whenever it becomes necessary to stop such train across any public highway, street, alley or farm crossing fails or neglects to leave a space of sixty [60] feet across such public highway, street, alley or farm crossing* shall be fined not more than twenty dollars [$20.00] nor less than three dollars [$3.00]." (Italics added.) [Acts 1905, ch. 169, §666, p. 584.] Section 10-3904, Burns' 1956 Replacement.

Burns' 1956 Replacement, but we are not at liberty to hold this now as a matter of law on the complaint now before us.

The memorandum to the demurrer also charged that it affirmatively appeared from the complaint that the plaintiff was guilty of contributory negligence. Freedom from contributory negligence need not be alleged in a complaint, for contributory negligence is a matter of defense. Section 2-1025, Burns' 1946 Replacement. Contributory negligence must affirmatively appear from the face of the complaint as a matter of law before a demurrer may be sustained for that cause. *Lindley* v. *Sink* (1940), 218 Ind. 1, 30 N. E. 2d 456; *Cleveland, etc. R. Co.* v. *Markle* (1918), 187 Ind. 553, 119 N. E. 371; *Chicago, etc. R. Co.* v. *Barnes* (1918), 68 Ind. App. 354, 358, 119 N. E. 26; *Cole* v. *Searfoss* (1912), 49 Ind. App. 334, 339, 97 N. E. 345. We fail to find the complaint affirmatively shows appellant was guilty of contributory negligence.

Until appellant had notice to the contrary, he had the right to assume that the appellee would use due care in its use of the crossing. *Elgin Dairy Co.* v. *Shepherd* (1915), 183 Ind. 466, 474, 108 N. E. 234, 109 N. E. 353. The complaint charged the night was "dark." To sustain the complaint, we have the right to infer visibility was very limited. Since *Opple* v. *Ray* (1935), 208 Ind. 450, 459, 195 N. E. 81, there is no absolute rule that the driver of a car is bound to see every object of danger in or on the highway at night. In view of the rule that the driver may assume others will use due care until he has notice to the contrary, he is not bound as a matter of law to drive at such reduced speed that at all times he could stop within his clear view ahead. If that were the rule, every driver at night would be guilty of negligence.

The complaint averred plaintiff "had his car equipped with good and adequate headlights and brakes, he was alert and keeping a look-out and was using ordinary care for his own safety." The crossing was unlighted, without automatic signals, and the tank car was black and stopped across a black top highway. On this state of the record we cannot hold as a matter of law that he was guilty of contributory negligence.

This is not the case where a train had lawfully entered upon a crossing, and was proceeding to move the remaining cars across when a traveler ran into the train. In such a case, the railroad has the legal right to complete the crossing, and breaches no legal duty owed the traveler; therefore, it is not guilty of any negligence. This was the holding in *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. 2d 714.

It would unduly extend this opinion to give a full analysis of the cases relied on by appellee to sustain the judgment, but we do not feel they are conclusive on the issues to be decided in the appeal at bar. In both *Pennsylvania Railroad Co.* v. *Huss* (1932), 96 Ind. App. 71, 180 N. E. 919 and *C. C. C. & St. L. Ry. Co.* v. *Gillespie* (1930), 96 Ind. App. 535, 173 N. E. 708, there had been a trial. Both were properly criticized, and in effect overruled as to contributory negligence as a matter of law in *Opple* v. *Ray* (1935), 208 Ind. 450, 457, 195 N. E. 81, *supra*.

In *Morley* v. *C. C. C. & St. L. R. R. Co.* (1935), 100 Ind. App. 515, 194 N. E. 806, the complaint disclosed the train was in motion across the crossing when the collision took place, and the complaint did not charge a failure to give signals of its approach, a negligent speed, blocking the crossing an unreasonable length of time, or running an unguarded cut of cars over the

crossing. The complaint failed to show the breach of any duty owed the plaintiff; hence there was no actionable negligence charged. In *New York Central Railroad Co.* v. *Gardner* (1940), 107 Ind. App. 366, 24 N. E. 2d 811, the collision occurred as the train was in motion and proceeding over the crossing.

In *Killion* v. *Chi., Milw., St. Paul & Pac. R. R.* (1940), 107 Ind. App. 527, 25 N. E. 2d 647, the discussion as to why the court affirmed the judgment is inadequate, and fails to take into consideration the law on sustaining a complaint when first attacked by a demurrer. In *Pitcairn* v. *Honn* (1941), 109 Ind. App. 428, 32 N. E. 2d 733, the evidence on the trial disclosed the plaintiff was guilty of contributory negligence as a matter of law. There was no train stopped on the crossing in *Pennsylvania R. Co.* v. *Rizzo* (1949), 119 Ind. App. 505, 86 N. E. 2d 91, 87 N. E. 2d 885, and the appeal was after a trial. In *Carmichael* v. *B. & O. R. Co.* (1951), 121 Ind. App. 463, 98 N. E. 2d 698, the car was driven into the side of a moving train. The result is correct, but the court was unwarranted in holding the complaint affirmatively disclosed contributory negligence as a matter of law.

In *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. 2d 714, *supra; Dyer, Admr.* v. *New York Central R. R. Co.* (1938), 214 Ind. 695, 17 N. E. 2d 839, and *New York Central R. R. Co.* v. *Dyer, Admr.* (1938), 214 Ind. 708, 14 N. E. 2d 718, each automobile involved was driven into the side of a moving train as it was proceeding over the crossing. There was no breach of duty by the railroad in any of these three New York Central cases, and no negligence proved.

None of the above opinions relied on by appellee persuade us that the complaint at bar failed to charge

actionable negligence, or that it affirmatively disclosed appellant was guilty of contributory negligence.

Judgment reversed with instructions to the trial court to overrule the demurrer to the complaint.

Landis, J., concurs.

Arterburn, J., concurs specially with separate opinion.

Achor, J., dissents with opinion in which Bobbitt, C. J., concurs.

CONCURRING OPINION

ARTERBURN, J.—I concur in the majority opinion, and do not construe it as making a railroad liable every time it stops a line of freight cars across a highway. The allegations in the complaint in this case are different in some respects from those in the cases of: *C. C. C. & St. L. Ry. Co.* v. *Gillespie* (1930), 96 Ind. App. 535, 173 N. E. 708; *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. 2d 714; *New York Central Railroad Co.* v. *Gardner* (1940), 107 Ind. App. 366, 24 N. E. 2d 811; *N. Y. Central R. R. Co.* v. *Dyer, Admr.* (1938), 214 Ind. 708, 14 N. E. 2d 718.

I do construe the opinion as placing the same responsibility on railroads to use care as is placed on motorists on the highways.

The method (and speed) of travel on the highways has changed considerably over the last fifty years. The acts which are required to exercise due care by railroads, as well as by travelers on the highway, have changed as travel has changed from the horse-drawn vehicles on gravel roads to the faster-moving motor car on smooth paved roads. Likewise the method and means of signaling and warning of danger has improved during the years by the perfection of various automatic devices, lights, flares, reflectors and luminous

paints to the extent that such uses are now reasonable, where previously they were not practical.

In this age, regardless of any statute, it would be negligence at common law for anyone to leave a large, yet indistinguishable, object on the traveled portion of a highway on a dark night (be it a motor vehicle or a railroad car) without warning other travelers of the deceptive condition. Whether or not such a condition existed as a result of an emergency and the injury occurred before the danger could be eliminated, is a matter of defense.

"The statutory limitations on the right to park or stop do not pre-empt the entire field, and the common law limitations on the right to use highways still prevail except where they have been expressly abrogated. Accordingly, a traveler's right to stop on a public highway at any place not prohibited by statute is determined by the reasonableness of his conduct under the circumstances and by the extent that such conduct interferes with or prevents the free use of the road by others with equal rights." West's Indiana Law Encyclopedia, §70, Automobiles, p. 420.

If it is not contributorily negligent for a motorist to drive into a tractor-trailer painted battleship gray with a tarpaulin over the load, parked on a paved highway on a dark, rainy night without lights or warnings, then the same is true where a freight car is stopped on a highway and disguised under similar conditions. *Northwestern Transit, Inc.* v. *Wagner* (1945), 223 Ind. 447, 61 N. E. 2d 591; *Cushman Motor Delivery Co.* v. *McCabe, Admr.* (1941), 219 Ind. 156, 36 N. E. 2d 769.

The fact that the stopped vehicle is a common carrier does not change the duty to use care nor to observe the applicable statutes. *Evansville, etc. Ry. Co.* v. *Woosley* (1950), 120 Ind. App. 570, 93 N. E. 2d 355.

There should not be one rule of liability for motorists or other persons creating dangerous conditions on highways and a different rule for railroads creating a like condition. The complaint with the reasonable intendments to be drawn therefrom states a cause of action in negligence under the principles established in this state.

### DISSENTING OPINION

ACHOR, J.—I am of the opinion that the complaint fails to state a cause of action under either of the specific acts of negligence upon which the majority opinion is predicated. The first such act of negligence is the assumed violation of §10-3904, Burns' 1956 Repl. [Acts 1905, ch. 169, §666, p. 584], which prohibits railroads from permitting their trains to remain standing upon highway crossings. However, with regard to this issue the appellant has not alleged in his complaint or contended either in his briefs or in oral argument that the negligence complained of constituted a violiation of this statute. Rather, the specific act of negligence alleged in the complaint and relied upon in appellant's written and oral arguments is the alleged violation of a common-law duty "to warn plaintiff [appellant] of the particular peril" which existed by reason of appellee standing a black car upon the crossing at night, which condition allegedly created a situation of entrapment.

This court has heretofore consistently maintained the position that issues not presented in the argument section of appellant's brief as required by Rule 2-17 of this court are waived. *Indiana State Toll-Bridge Commission* v. *Minor* (1957), 236 Ind. 193, 139 N. E. 2d 445; *Greenwood* v. *City of Washington* (1952), 230 Ind. 375, 102 N. E. 2d 642; *Gross Income Tax Div.* v. *Conkey Co.* (1949), 228 Ind. 343, 88 N. E. 2d 563, 90

N. E. 2d 805. As a general policy this court has refused to decide cases on the basis of issues not presented to the trial court nor argued by the parties on appeal.[1] The policy is grounded upon substantial reason. In fairness to the losing party he should have an opportunity to present the contrary position and the court should be advised on all aspects of the issue before stating an opinion. However, since the case has been decided in the majority opinion on the basis of the statute [§10-3904, *supra*], as well as under the common law, and since I am of the opinion that the facts alleged do not state a cause of action under either of said acts of negligence, it is necessary that my dissent employs consideration of both such acts.

It occurs to me that the question as to whether the facts alleged constituted a cause of action under the statute has been well established to the contrary in the case of *C. C. C. & St. L. Ry. Co.* v. *Gillespie* (1930), 96 Ind. App. 535, 541-542, 547, 551, 173 N. E. 708. Although that case was decided by the Appellate Court, the same issues were presented to this court on petition to transfer and the petition was denied.[2] The facts and issues in that case are in marked similarity with those in the present case.[3] In the Gillespie case, *supra*, the

---

1. Rule 2-17. See: *Tinder* v. *Clarke Auto Co.*, (1958), 238 Ind. 302, 149 N. E. 2d 808.

2. In the Gillespie case (96 Ind. App. 535), transfer was asked on two basic grounds: (1) That the Appellate Court erroneously decided a new question of law, to-wit: That the mere allegation that the railroad stopped one of its trains and allowed its freight cars to stand across the highway did not constitute a violation of §2903 [§10-3904, Burns' 1956 Repl.] and therefore that the mere allegation of such fact did not constitute negligence *per se*; (2) that under the common law the facts presented "a condition unattended by negligence on its (the railroad's) part" which resulted in the injury.

3. The allegations as taken from the appellant's brief in the Gillespie case were as follows: ". . . *That the night was dark and heavy rain was falling on the asphalt pavement* with which said South Huntington Street was paved at said place

court specifically held that allegations that cars were "standing across" the intersecion are not sufficient to allege a violation of §2903 [§10-3904, *supra*].[4]

and at said time. That the lights from the lamp posts on the said bridge were burning and were reflected up in the faces of this plaintiff and the other occupants of said car. pp. 4-5 Appellant's Br.

"That at the time said automobile was being driven toward said switch of said defendant, the employes of said defendant, acting in the scope of their employment for said defendant, had moved a string consisting of a number of freight cars, on the east end of which a track crosses said South Huntington Street in said city. That said freight cars were standing across said track and blockading and wholly obstructing said street and that said employes or train crew in charge of said locomotive and cars negligently stopped said cars over and in such a manner as to obstruct said highway. That said employes knew, or by the use of reasonable care could have known, that it was highly dangerous to the public using said highway to permit the said cars to remain standing on said crossing. That said train crew so employed by said defendant negligently failed to place any flagman or other person with a lantern and failed to place any light on the said highway on the north side of said cars as a signal to approaching vehicles and to warn the public of the dangerous situation." (pp. 4-5 appellant's brief.)

4. "The legislature has given to the railroad companies the right to construct their roads upon or across any public highway. See §12948, Burns' 1926 [§55-618, Burns' 1951 Repl.]. Certain duties are required of a railroad when its tracks cross any street, avenue or alley in any incorporated town. The right so conferred necessarily implies that the railroad company is authorized to operate its locomotives engines, trains and cars on the tracks on and over such crossings, subject to such regulations as prescribed by the legislature, and with due regard for others whose rights are equal in the use of the 'King's highway.' *Jacobson* v. *N. Y. S. & W. R. Co.*, *supra* (87 N. J. Law 378, 94 Atl. 577) ; *Philadelphia & R R. Co.* v. *Dillon*, *supra* (1 W. W. Har. (31 Delaware) 247, 114 Atl. 62, 15 A. L. R. 894)." (96 Ind. App. at p. 547.) (173 N. E. 713.)

". . . In the case of *Ezra* v. *Manlove* (1845), 7 Blackford, 389, the Supreme Court said: 'It is a general rule that in asserting a right founded on a statute, the pleader should aver every fact necessary to inform the Court that his case is within it.' An examination of the several allegations contained in appellee's complaint fail to disclose that appellee has brought herself within the law in charging the violation of §2903 *supra* [§10-3904]. The offense defined in the first part of the above mentioned section is in permitting the train of cars to *remain standing* across the street or public highway so as to prevent the use and enjoyment of the street or highway by the citizens, as a public thoroughfare. (Italics furnished.) Momentarily stopping a freight train or cars on a public street, highway, etc., is not a violation of §2903 *supra*. The appellee, by the averments of her complaint,

The construction placed upon the statute in the Gillespie case, *supra*, is based upon substantial reason, and the fact that the legislature has permitted the decision to stand nearly three decades without change is evidence that the construction has met with the approval of the legislature.

It is suggested that the Gillespie case, decided by the Appellate Court, is in conflict with decisions of this court. I am obliged to take a contrary position. While it is true that this court has stated on several occasions that the violation of the statute [§10-3904, *supra*] was negligence *per se*, in none of said cases did this court undertake to construe the statute by defining the facts necessary to constitute a violation. See: *Central Indiana R. Co.* v. *Wishard* (1917), 186 Ind. 262, 114 N. E. 970.

Furthermore, it is asserted that this case and the Gillespie case, *supra*, are distinguishable upon the pleadings. However, in my opinion the cases are alike in all material aspects. As we have noted, the facts alleged and the issues presented in this and the Gillespie case were almost identical. In both cases it is alleged that the railroad cars were standing upon the crossing; that it was nighttime and that the cars were painted black and that the asphalt was black. In each instance the automobile was driven into the side of the cars standing across the highway. In each case it is contended that the facts constituted an exceptional hazard which imposed a duty upon the railroad to give the driver of the vehicle upon the highway some notice or

charges that the cars were 'standing across.' *The allegations are not sufficient to allege a violation of §2903.* (Our italics.) *Cleveland R. R.* v. *Taurer* (1911), 176 Ind. 621, 96 N. E. 758, 39 L. R. A. (N. S) 20; *Becker* v. *State* (1904), 33 Ind. App. 261, 71 N. E. 188; *C. C. C. & I. R. R.* v. *Wynant* (1885), 100 Ind. 160." (at pp. 541-542.) (173 N. E. 711.)

warning. In neither case was there a motion filed to make the complaint more specific and in each case the sufficiency of the complaint was contested by demurrer. In the Gillespie case, *supra*, the courts construed the statute and considered the allegations of the complaint and concluded the allegations were not sufficient to state a cause of action within the statute. (§10-3904, *supra*.)

In reaching the above conclusion in the Gillespie case, *supra*, the court employed the well established rule that to maintain an action in damages based upon the violation of a specific statute the pleader must bring himself within the clear provisions of the statute, *State ex rel. Ayer* v. *Ewing* (1952), 231 Ind. 1, 106 N. E. 2d 441, or if conditions or exceptions exist in the enacting clause of the statute the pleader must negative the existence of such conditions or exceptions in order to state a cause of action.[5] Consistent with this reasoning the decision in the Gillespie case, *supra*, is grounded upon the facts, first, that the statute [10-3904] is expressly made to apply to circumstances where railroad cars are permitted to "remain standing" on crossings as contrasted with those which temporarily stand upon crossings in the current operation of the cars. In this regard it is to be noted that the word "remain" which qualifies the "standing" of such cars is defined in Webster's New International Dictionary as follows: "To be left after others have been removed or destroyed; to be left after a number or quantity has been subtracted or cut off. . . . To stay

---

5. ". . . If, . . . the plaintiff's cause of action cannot be accurately alleged without reference to the exception, he must allege sufficient facts to show that he is not within it. And if he relies upon an exception to a general rule, he must state the facts which bring his case within the exception." 41 Am. Jur. §85, p. 351.

behind while others withdraw." Secondly, the court in the Gillespie case, *supra,* reasons that since other statutes [§55-618, Burns' 1951 Repl.] confer upon the railroads the right to acquire right-of-way and to construct roads and operate trains across public highways that as a necessary incident to such operation the temporary standing of cars across public highways is necessarily implied and authorized. It therefore follows that the stopping and/or standing of trains across public highways, other than for an unreasonably long period of time, is a condition or exception necessary to and incorporated within the statute [§10-3904], which condition or exception the pleader is obliged to negative in order to allege a violation of the special statute. This the appellant, in this case, failed to do, and for that reason I am of the opinion he has not stated a cause of action within the statute.[6]

6. ". . . . It is well settled that a plaintiff is only entitled to recover, in an action for damages predicated on negligence, by proof of one or more of the specific acts of negligence alleged in his complaint, and that a failure to make such proof will defeat his right of action, no matter what other acts of negligence are disclosed by the evidence. *Indianapolis, etc., Transit Co.* v. *Derry* (1904), 33 Ind. App. 499, 71 N. E. 912; *Chicago, etc., R. Co.* v. *Thrasher* (1904), 35 Ind. App. 58, 73 N. E. 829; *Plummer* v. *Indianapolis Union R. Co.* (1914), 56 Ind. App. 615, 104 N. E. 601; . . . *Terre Haute Electric Co.* v. *Roberts* (1910), 174 Ind. 351, 91 N. E. 941; *Indianapolis Traction, etc., Co.* v. *Mathews* (1911), 177 Ind. 88, 97 N. E. 320; *Sandy River, etc., Coal Co.* v. *Caudill* (1901), (Ky.) 60 S. W. 180; *Savanna, etc., R. Co.* v. *Tiedeman & Bro.* (1897), 39 Fla. 196, 22 South. 658; *Louisville, etc., R. Co.* v. *Wade* (1903), 46 Fla. 197, 35 South. 863; *Northern Milling Co.* v. *Mackey* (1901), 99 Ill. App. 57; *Chicago, etc., R. Co.* v. *Mock* (1874), 72 Ill. 141. The giving of this instruction violates this rule, as its reasonable interpretation would lead the jury to believe that it was its duty to return a verdict for appellee, on a finding that his injuries were caused by any negligence of appellant, regardless of the allegations of the complaint. The giving of it was therefore error. . . ." *Indianapolis, etc., Traction Co.* v. *Sherry* (1917), 65 Ind. App. 1, 4-5, 116 N. E. 594-595.

"A plaintiff must recover according to the allegations of his complaint, or not at all. In actions founded upon the alleged negligence of the defendant, the plaintiff cannot charge one

The next question is, did the complaint state a cause of action against appellee railroad under the common law? Clearly no facts are alleged which constitute a state of "entrapment," since it is not alleged that, either directly or by inference, it had knowledge of the facts complained of. True, our courts have, on several occasions held that it is the duty of the employees of the railroad company to exercise ordinary care in the operation of trains, and that failure to so exercise such care may constitute negligence. *Pennsylvania R. R. Co.* v. *Sherron* (1952), 230 Ind. 610, 105 N. E. 2d 334; *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. 2d 714; *Pittsburgh, etc. R. Co.* v. *Pence* (1916), 185 Ind. 495, 113 N. E. 7; *The Toledo and Wabash Railway Company* v. *Goddard* (1865), 25 Ind. 185; *Evansville, etc. R. Co.* v. *Hoffman* (1914), 56 Ind. App. 530, 105 N. E. 788; *Virgin* v. *Lake Erie, etc. R. Co.* (1913), 55 Ind. App. 216, 101 N. E. 500. However, with the exceptions hereinafter enumerated this rule has only been applied to the operation of trains which are also approaching the crossing.

The exceptions to the rule have been made under circumstances where, in addition to the mere color of their cars standing upon a crossing, either the crossing was hazardous in itself, the cars had stood for a long period of time, or the railroad knowingly created a situation which erroneously induced the person traveling upon the highway to believe that he could traverse the crossing with safety, as in the cases of *Gillies, by next friend* v. *N. Y. C. R. R. Co.* (1954), 124 Ind. App. 382, 116 N. E. 2d 555; *Louisville & N. R. Co.* v. *Revlett* (1946), 224 Ind. 313, 65 N. E. 2d 731; *New York, etc.*

kind of negligence and prove another. *Cleveland, etc., R. Co.* v. *Wynant*, 100 Ind. 160; *Armacost, Adm.* v. *Lindley, Adm.*, 117 Ind. 295." *Thompson* v. *Citizens Street R. Co.* (1889), 152 Ind. 461, 465, 53 N. E. 462.

554

*R. Co.* v. *Shields* (1916), 185 Ind. 704, 112 N. E. 762, and *Vandalia R. Co.* v. *Baker* (1912), 50 Ind. App. 184, 97 N. E. 16. The mere color of the cars standing upon a crossing has not been considered to provide this exception.

With the above exceptions, the common law rule of negligence has not been applied to trains or cars which are already occupying crossings when vehicles upon the highway approach such crossing. *Carmichael* v. *B. & O. R. Co.* (1951), 121 Ind. App. 463, 98 N. E. 2d 698; *Morley* v. *C., C., C. & St. L. R. R. Co.* (1935), 100 Ind. App. 515, 194 N. E. 806; *Pennsylvania Railroad Co.* v. *Huss* (1932), 96 Ind. App. 71, 180 N. E. 919; *New York Central R. R. Co.* v. *Casey, supra.* In the Gillespie case, *supra,* even though the cars were black and they stood on the crossing for three minutes during switching operations, the court held that, as a matter of law, "the evidence presents a situation as far as appellant is concerned . . . unattended by negligence on its part."

For an exhaustive study of this question, see 161 A. L. R., "Liability of railroad for injury due to road vehicle running into train or car standing on highway crossing," "d. Railroad's negligence as jury question," pp. 138-139, 141-142. This treatise summarizes the law as follows:

> "Disregarding mere statements of rules and considering the actual holdings, *in only about one fifth of the cases have courts recognized that the circumstances presented a jury question concerning the negligence of the railroad, or that the complaint in the case was not demurrable.*" (Our italics.)

In each of the "one fifth of the cases" cited in the above treatise, in other cases cited by the parties and

in other cases which have otherwise come to our attention, there have been other acts of negligence in addition to the mere color of the cars or the fact of their standing upon the crossing which have constituted the negligence complained of and thus made the allegations of negligence sufficient to present a jury question.

As heretofore stated, the reasoning upon which actions such as this have been held demurrable has not been consistent. However, the decisions have been born of practical necessity. There is reason why the same rules of common law negligence which are applied in motor vehicle cases may be applied to railroads. Railroads are the arteries which carry the heavy commerce of our country. They are necessary to the national economy and national defense. They are required to acquire their own rights - of - way by purchases and public grant. Their operations began after the development of much of the common law of negligence. The costs and methods of operating railroads are of a size and complexity not readily comprehended by the ordinary reasonable person who serves as a juror. Therefore, the courts have considered it necessary in nearly every instance that the standard of care required by railroads for the protection of the public with respect to their crossings, be specifically stated by the legislature or other public authority in order that the responsibility of railroads and the public may be clearly defined, and that within this standard of care the duty and liability of each shall be clearly defined and the railroads shall not be harassed by unwarranted actions of persons who drive into the side of their trains.

For these reasons, I am of the opinion that the law should be changed only by legislative enactment. The diligent adherence of our courts to the doctrine of *stare decisis* has established our courts as the stabiliz-

ing force of our society. It occurs to me that the law controlling of this case has now been so firmly established under the doctrine that it should not be disturbed, except by legislative enactment.

Bobbitt, C. J., concurs.

NOTE.—Reported in 150 N. E. 2d 897.